PAXTON et al. v. FISHER, Secretary of the State Land Board, et al.

No. 5575. Decided June 4, 1935. (45 P. [2d] 903.)

*Cline, Wilson & Cline,* of Milford, and *W. A. Hilton,* of Salt Lake City, for appellants.

*Geo. P. Parker* and *Skeen & Skeen,* all of Salt Lake City, and *W. B. Higgins,* of Fillmore, for respondents.

MOFFAT, Justice.

This is a possessory action under the forcible entry and detainer statute. The property in question is commonly known as the I. H. L. Ranch of about 1,200 acres, located in Snake Valley in Western Millard county, Utah, a short distance from the town of Garrison. The evidence is free from conflict. The findings of fact are not questioned. The plaintiffs had been in possession of the ranch during the preceding year. During the month of February or March, 1934, the plaintiffs leased the ranch from the state of Utah. The lease extended until December, 1934, and, subject to certain conditions not affecting the issues herein, the right to sell the ranch during the leased period was reserved by

the state land board, who executed the lease on behalf of the state to Frank Paxton and Vie K. Paxton, his wife.

On the 13th of March, 1934, Frank Paxton went out to the ranch. He attended an irrigation company meeting. Under the lease he was required to pay the water assessments. The land was irrigated from the ditches of the Big Springs Irrigation Company. While at the ranch Paxton arranged with two men named Davies who lived near the ranch to do the work on the ditches in payment of the water assessment, and to irrigate the alfalfa and meadow lands. He also arranged with one H. C. Rowley to occupy the house on the ranch, and to see that the few head of live stock on the ranch did not stray. Frank Paxton then left for Colorado, intending to return with about 800 head of cattle he had at Clear Lake, Utah, not far from Fillmore.

Elmer and Will Davies did the ditch work and some irrigating during the early part of April, and Rowley moved into the house on the ranch. Paxton had paid $600 upon the lease as required. On the 17th day of April, 1934, Thomas Dearden, Sr., and sons entered into a contract with the state of Utah, acting through its state land board, for the purchase and sale of the I. H. L. Ranch, then under lease to Frank Paxton and wife. The period covered by the lease to Paxton was February 1, 1932, to December 1, 1934. The state land board notified Paxton of the sale of the ranch and sent to him in return the $600 payment and advised him that his lease was terminated. On Sunday, April 22d, and during Paxton's absence, Thomas Dearden told Rowley he had bought the ranch and was going to take possession the following Wednesday. Rowley moved out of the house, and delivered the keys to Dearden about April 23d. Rowley stated that he was not employed to look after the ranch, but was merely occupying the house with Paxton's permission. On April 25, 1934, Thomas Dearden moved his furniture to the house, and he and his men moved over 400 head of cattle and horses onto the premises. Mr. Dearden drove the cattle belonging to Paxton off the ranch and into a pasture

owned by Davies. Paxton had not returned to the ranch. The Davies boys were employees of Paxton, saw Dearden driving his stock onto the place, and saw him moving his furniture, but said nothing to Dearden about staying off the place, and made no attempt to stop him. The day before moving on the property Dearden told Elmer Davies that he had bought the ranch and was going to take possession, and wanted to know what was to be done with Paxton's cattle.

Some days after Dearden took possession, Elmer Davies went to irrigate the land, and Thomas Dearden objected to his doing any irrigating for Paxton. Will Davies wrote to Paxton sending him a statement of what had been done. On April 27, 1934, Taft Paxton, son of Frank Paxton, served a notice upon Thomas Dearden at the ranch house stating the claimed rights of Paxton to the land pursuant to the lease from the state, and claiming that possession to be absolute and unconditional. The written notice further stated that an entry would be regarded as a trespass and a "forcible entry" and would be repelled "by all lawful means." Thomas Dearden then stated that he would not give a definite answer until he had talked with others interested. Taft Paxton asked Thomas Dearden if he would move his cattle off the ranch and move off himself. Dearden while at the ranch did not answer definitely, but arranged to meet Paxton at Milford the same day. This was done, and at Mr. Cline's office it was stated that the state land board office had instructed Mr. Cline not to give up possession. Mr. Cline advised Mr. Dearden not to surrender possession, and thereupon Dearden refused to do so. This action followed.

The parties defendant named in the caption of the complaint are George Fisher, secretary of the state land board, Thomas Dearden, Frank Tolton, L. R. Anderson, and Thomas Dearden, Jr. In the charging part of the complaint the parties named are "George Fisher and Thomas Dearden." A general demurrer to the complaint was filed by Thomas Dearden and Thomas Dearden, Jr., jointly.

The complaint stated a cause of action against Thomas Dearden, and, the demurrer being joint, was properly overruled. Thomas Dearden, Sr., is sometimes referred to as Thomas Dearden, Thomas Dearden, Sr., and Thomas D. Dearden. Herein the parties will be referred to as Thomas Dearden, Sr., and Thomas Dearden, Jr., except when designated as defendants.

At the time the court passed upon the demurrer, some statements were made by counsel and the court as to appearances, and counsel for plaintiffs moved to dismiss as to all parties except "Thomas Dearden," whether senior or junior does not appear. The court granted the motion, but no judgment seems to have been entered upon the order of dismissal. Thereafter, Thomas Dearden, Sr., and Thomas Dearden, Jr., filed separate answers. When the cause came on for trial, and before any evidence was introduced, each of the defendants objected to any evidence being introduced or received on the ground the complaint did not state sufficient facts to constitute a cause of action. The objection was overruled, and the cause proceeded to trial. As the issues then stood as made by the pleadings, the objection of Thomas Dearden, Jr., should have been sustained, had the case been an ordinary civil action. The complaint was sufficient to ward off a general demurrer or an objection to the introduction of evidence as to Thomas Dearden, Sr. At this state of the proceedings the complaint failed to charge Thomas Dearden, Jr., with anything at all.

At the conclusion of plaintiffs testimony, Thomas Dearden, Jr., interposed a motion for a nonsuit. The record is silent as to any participation in the subject-matter of the action by Thomas Dearden, Jr. He is one of the parties mentioned in the contract of purchase under which the Deardens claimed the right to go into possession. No other reference is made to him personally, except in the pleadings as indicated. The motion for nonsuit was denied. After plaintiffs had rested they asked leave to amend the complaint to conform to the proof. The court then made an

order directing the plaintiffs to amend the complaint "to conform to the proof, including forcible detainer.' Pursuant to the order of the court, plaintiffs filed an amendment to the complaint charging:

"That at the time of the making of said lease the State of Utah was the owner of said premises and the said State Land Board was authorized to lease the same, and thereupon plaintiffs became entitled to the exclusive possession, use and occupation of said premises, and on the 25th day of April, 1934, were in the peaceable, actual and exclusive possession of said property, and on the said 25th day of April, 1934, the defendants Thomas Dearden, Sr., and Thomas Dearden, Jr. wrongfully and unlawfully entered upon and into the possession of said property, and during the absence of the plaintiffs, by threats and menacing conduct turned plaintiffs' agents and servants then on said property and in the actual possession thereof out of the possession of said property. That after defendants entered upon said real estate and into the possession thereof, in the manner hereinabove alleged, and after written demand made by plaintiffs for the surrender thereof, said defendants refused for the period of three days, to surrender the same to the said plaintiffs. That said plaintiffs at the time of the entry into and upon said real estate by defendants as hereinabove alleged, and within five days of the service of the said written notice and demand were in the actual, peaceable and undisturbed possession of said premises."

This amendment was ordered by the court in pursuance of the authority given by the provisions of R. S. Utah 1933, 104-60-12, which reads:

"When upon the trial of any proceeding under this chapter it appears from the evidence that the defendant has been guilty of either a forcible entry or a forcible detainer, other than what is charged in the complaint, the court must order that such complaint be forthwith amended to conform to such proofs. Such amendment must be without any imposition of terms. No continuance must be permitted upon account of such amendment, unless the defendant, by affidavit filed, shows to the satisfaction of the court good cause therefor."

The fact that Thomas Dearden, Jr., was one of the parties to the purchase contract without more would not make him personally liable in an action of forcible detainer.

Thomas Dearden, Jr., separately assigns error. In view of the record, it was error to order an amendment of the complaint to include Thomas Dearden, Jr., upon a charge of forcible detainer or to enter judgment against him; there being no evidence in the record connecting Thomas Dearden, Jr., with the alleged forcible entry or detainer.

The other assignments are not argued separately, but are treated substantially as a single proposition which is whether the complaint brings the defendant Thomas Dearden, Sr., within the purview of subdivision (2) of section 104-60-2, R. S. Utah 1933, which provides:

"Every person is guilty of a forcible detainer who either:

"(1) By force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise; or,

"(2) In the nighttime, or during the absence of the occupants of any real property, unlawfully enters thereon, and, after demand made for the surrender thereof, refuses for the period of three days to surrender the same to such former occupant. The occupant of real property within the meaning of this subdivision is one who within five days preceding such unlawful entry was in the peaceable and undisturbed possession of such lands."

That the plaintiffs were the occupants of the real property in question is abundantly supported by the evidence, as is likewise the fact that defendant Thomas Dearden entered upon the property "during the absence of the occupants," the Paxtons. The court found that at the time of the alleged entry by defendants the plaintiffs were absent from the premises. This finding is not questioned and as above indicated is supported by the evidence. That plaintiffs made demand for surrender of the premises and that defendants refused for a period of three days to surrender to plaintiffs as the former occupants at the time of bringing this action is found by the court and is likewise supported by the evidence.

Appellant questions the sufficiency of the written notice as to form, but not the service thereof. We are satisfied the notice was sufficient. Had the written notice been the

only communication between the parties, an arguable proposition might have been presented; but in view of ■ the discussions and actions of the parties it is clear that demand for and surrender of the premises were made and the purpose thereof was understood. We think it is not necessary to discuss further the question of the sufficiency of notice.

The statute (R. S. 1933, 104-60-11) provides that on the trial of any proceeding for a forcible entry or forcible detainer the plaintiff shall only be required to show, in addition to the forcible entry or forcible detainer complained of, that such plaintiff was peaceably in the ■ actual possession at the time of the forcible entry, or was entitled to the possession at the time of the forcible detainer. This was shown. The fact that defendants had entered into a contract of purchase with the state whereby they were to buy and receive possession of the property was no authority for an entry in the absence of plaintiffs while plaintiffs were lawfully in possession. A proper demand should have been made for possession if they were entitled to such possession, and if refused, then the question of possession should have been settled as by law provided.

Proceedings under the forcible entry and detainer statute are summary in character, speedy in enforcement, and penal for violation thereof. The purpose of the statute is to provide a speedy remedy, summary in character, to obtain possession of real property. Even rightful ■■ owners should not take the law into their own hands and proceed to recover possession by violence, or by entry in the nighttime, or during the absence of the occupants of any real property.

The judgment rendered by the trial court finds support in the evidence. Some of the proceedings were irregular. The complaint is not a model even as amended. Some of the evidence objected to might well have been rejected; but such as was not rejected was subject to ■■ no greater charge than being immaterial, and as the

cause was tried to the court and no findings were based on such evidence, the errors were harmless.

The judgment as to Thomas Dearden, Jr., is reversed; there being no evidence in the record to support the judgment against him. The judgment against Thomas Dearden, Sr., is affirmed. Thomas Dearden, Jr., is entitled to recover his costs on the appeal if he has been put to any separate costs. Respondents are entitled to recover costs against Thomas Dearden, Sr.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (concurring).

I concur. An examination of chapter 60 of title 104, R. S. Utah 1933, reveals that the statutes against forcible entry, forcible detainer, and unlawful detainer are designed to cover every possible situation where one person obtains actual possession of the property occupied by another or forcibly or unlawfully detains it, although peaceably entering. The statutes must all mesh. Section 104-60-1 covers the case where a person enters real property of another by breaking, violence, circumstances of terror, fraud, intimidation, or stealth. Subsection (2) covers the case in which the entry is peaceable, but the turning out is by force, threats, or menacing conduct; the theory of that provision being that the turning out by such means makes the initial entry a forcible one. Section 104-60-2, pertaining to forcible detainer, covers the cases where the entry may be peaceable or otherwise but the detainer is by force, in the absence of the occupant, or in the nighttime. Section 104-60-3 provides for the cases where real property is unlawfully withheld from another; the original possession being lawful. Under section 104-60-1, a person may forcibly enter but leave and not detain. The gist is the force or menace involved in the entry, being something more than a mere trespass. The gravamen of the action is not the detainer. Under section

104-60-2 the gravamen is the detainer. Under subsection (1) of that section the unlawful holding and keeping of possession is by force, menaces, or threats of violence. Under subsection (2) there need be no forcible entry nor detaining by violence. It is sufficient if the defendant unlawfully enters in the nighttime or during the absence of the occupants and after demand for the surrender thereof refuses for a period of three days to surrender the same to the former occupant. The former occupant need only show that he was in peaceable and undisturbed possession for five days preceding such alleged unlawful entry. It is under this subsection (2) that the plaintiffs finally prevailed after an amendment to their complaint. There is nothing in the evidence to show that the entrance was in the nighttime or was by force, fraud, intimidation, or stealth. There seems to be no question but that the plaintiffs were in peaceable possession for more than five days before the entry of Dearden, Sr. The statute reads:

"Every person is guilty of a forcible detainer who either: * * *

"(2) In the nighttime, or during the absence of the occupants of any real property, unlawfully enters thereon, and, after demand made for the surrender thereof, refuses for the period of three days to surrender the same to such former occupant."

It will be noticed the statute does not require the demand to be made in writing and, further, that it does not require that the demand specify that the person alleged to be forcibly detained surrender the premises in the period of three days. In the statute under unlawful detainer it is specified that the notices should be in writing, and that they should be served upon the party alleged to be unlawfully detaining. In the statute dealing with forcible detainer, an oral demand is sufficient and when made it is incumbent upon the other party to vacate within three days or be subject to an action of forcible detainer. The demand does not need to specify that he shall vacate within three days. That is a duty put upon him by statute when the demand is made if he is forcibly detaining under the provisions of subsection (2) of

section 104-60-2. For that reason I agree with the prevailing opinion that in this case the notice was sufficient. While it did not specifically make a demand, yet it was sufficient to apprise the defendant Dearden that the plaintiffs maintained that he was detaining the premises by force as meant by the statute. Instead of vacating within three days, he announced his refusal to vacate.

In this case the entry was unlawful. Under the statute, all entries on the actual possession of another are unlawful, and the question of good or bad faith on the part of the defendant does not affect the right of recovery in this form of action. *Kerr* v. *O'Keefe*, 138 Cal. 415, 71 P. 447; *Giddings* v. *Seventy-six Land & Water Co.*, 83 Cal. 96, 23 P. 196; *Voll* v. *Hollis*, 60 Cal. 569. Likewise, evidence of title or right of possession is inadmissible in an action of forcible detainer. *McCauley* v. *Weller*, 12 Cal. 500, where it was held:

"The action of forcible entry and detainer is a summary proceeding to recover possession of premises forcibly or unlawfully detained. The inquiry in such cases is confined to the actual peaceable possession of the plaintiff and the unlawful or forcible ouster or detention by defendant—the object of the law being to prevent the disturbance of the public peace, by the forcible assertion of a private right. Questions of title or right of possession cannot arise; a forcible entry upon the actual possession of plaintiff being proven, he would be entitled to restitution, though the fee simple, title and the present right of possession are shown to be in the defendant."

The law places one who is unlawfully or forcibly dispossessed back into the position in which he was before such event happened, regardless of the right to possession by the one forcibly or unlawfully entering. After that it is time enough for the parties to try out the question of title and possession. It is well stated in *Scott* v. *Willis*, 122 Ind. 1, 22 N. E. 786. The court said:

"The owner of land who is wrongfully held out of possession by one who has no legal or equitable right may embrace the opportunity and gain peaceable possession, if he can; but, unless he can obtain possession without force or show of violence, his sole remedy is to invoke the aid of legal procedure. To that end a special statutory

proceeding has been provided, whereby a landlord who is entitled to the possession may have a tenant who unlawfully holds over removed. The same statute also provides that a tenant who has been evicted by force may have the possession restored to him, even against a landlord who might have had him removed by legal procedure, on complaint by him made, in the same manner as provided in case of tenants holding over."

In the case at bar the defendant may have had the right to possession, but his entry was unlawful as against the plaintiffs. It is not his right to possession which is unlawful, but his entry on the possession of another, however untenable in law that possession may be. The word "unlawful," as used in this section, means unlawful with respect to the relations between the plaintiff and defendant. See *Dutcher* v. *Sanders*, 20 Cal. App. 549, 129 P. 809. In *Carteri* v. *Roberts*, 140 Cal. 164, 73 P. 818, 819, the court said:

"It is a necessary element to the cause of action here presented that the entry of the defendants upon the land should have been unlawful with respect to the relations between the defendants and the plaintiff."

The entry is unlawful in respect to the relation between the plaintiff and defendant whenever the defendant enters without the permission of the plaintiff. Some jurisdictions have seemed to recognize that an entry on the possession of another may not be unlawful where, by the contractual relations between the parties, the one entering has the right to possession. Thus, in the case of *Baxley* v. *Western Loan & Building Co.* (1933) 135 Cal. App. 426, 27 P. (2d) 387, 388, it was held that while neither title nor right of possession of real property is ever an issue in actions where forcible entry or forcible detainer is charged, the right of possession might be shown in evidence in certain cases where forcible detainer is charged. This was the case in which the vendor was given the right under the contract upon default to "reenter upon the premises and resume possession thereof." The Baxley Case has some resemblances to the case at bar. The vendee assigned his contract to purchase to the plaintiff who took

possession but made no further payments. He did not reside on the premises (just as the Paxtons did not reside on these premises), but engaged Mrs. Roberts to act as manager of the apartment house. The defendant talked to Mrs. Roberts, told her that it was the owner of the premises, and that the vendee was in arrears. The following morning Mrs. Roberts admitted Mr. Campbell, another employee of the defendant, and installed him in one of the vacant apartments and agreed with Mr. Campbell that she would act as manager for and on behalf of the defendant. Plaintiff later appeared and demanded that Campbell leave the premises. He refused to do so. Plaintiff made demand on the defendant for the possession of the same, the defendant refused and the action of forcible detainer was brought. The material differences between the Baxley Case and the case at bar are that there was no contracutal relation between the Paxtons and the Deardens, whereas in the Baxley Case there was a contractual relation between the defendant and the plaintiff's assignor. In the Baxley Case, the manager of the plaintiff actively consented and installed the defendant in the premises. The servants of the plaintiff and the occupant of the house in the instant case simply walked off the premises, vacating them and leaving the defendant to enter. The court in the Baxley Case does not discuss the question as to whether there was an absence of the occupant. The court in that case held that possession had been obtained peaceably. It did not hold that it was given by the consent of the plaintiff; it being apparent that Mrs. Roberts had no authority to give such consent. The decision was put upon the basis that:

"When contractual relations exist between the parties whereby the right to possession has been given to the one taking possession by means of the peaceable entry, then neither the entry nor detention of the property is 'unlawful' within the meaning of said section 1160 dealing with forcible detainer."

The Baxley Case shows the distinction by citing from *Dutcher* v. *Sanders,* supra. There the parties were adverse

claimants in a contest before the United States Land Office involving land in the possession of the plaintiff. The contest was decided against plaintiff, and defendant took possession of the land in the absence of the plaintiff. He refused to relinquish possession on plaintiff's demand, and plaintiff brought an action in forcible detainer under a statute similar to ours. The court held that the defendant's peaceable entry was unlawful despite the fact that in the contest the Commissioner of the General Land Office had canceled plaintiff's previously existing desert land entry on the land and awarded the preference right to the defendant. In short, in the Dutcher Case, as distinguished from the Baxley Case, there was no contractual relationship between plaintiff and defendant by which the plaintiff had by such contract permitted defendant to enter. I doubt the validity of this distinction. It seems to me it would throw open many issues not contemplated by the summary proceedings. Leases permitting entry after default would, it appears to me, come under this rule, and even in California it is held that where a tenant holds over the landlord must resort to the statutes covering unlawful detainer. It may be said of the Baxley Case, however, that the entry was peaceable; Mrs. Roberts having left the representative of the loan company in possession and, moreover, the occupant Baxley may not have been absent, since he was occupying at the time of entry through Mrs. Roberts.

Be that as it may, in the instant case there was no contractual relation between the Paxtons and Deardens. Therefore, if the principle of the Baxley Case is correct, it cannot apply here.

I agree with the prevailing opinion that the entry of Dearden, Sr., was unlawful as against the plaintiff who still had the right not to have his possession disturbed, whether right or wrong, by the entry of another; that the plaintiff had peaceable possession for five days prior to such unlawful entry; that proper demand was made and that defendant Dearden, Sr., refused to relinquish possession.

In general, where one moves in on the possession of real property occupied by another by force or menace or in the nighttime, or in the absence of the latter, and remains, so as to constitute it more than a trespass, he does so at his peril, even though he may have the right to the possession.

The law contemplates that he who claims possession as against another will demand it and upon refusal resort to law to obtain it, and not take the law into his own hands. In this sense the first occupants possession is nine points of the law.

I therefore concur.