## PETERSEN v. HODGES.

No. 7583.   Decided December 19, 1951.   (239 P. 2d 180.)

See 51 C. J. S., Landlord and Tenant, sec. 230. Rescission of lease. 32 Am. Jur., Landlord and Tenant, sec. 826; 93 A. L. R., 1243.

*E. Morgan Wixom, Samuel C. Powell,* Ogden, for appellant.

*George M. Mason,* Brigham City, for respondent.

McDONOUGH, Justice.

Plaintiff landlord, sued for an accounting and attorney's fees pursuant to the terms of a written lease covering 109 acres, known as the Penrose place. By separate cause of action, plaintiff sought to recover the sum of $2,090 allegedly advanced to the defendant as a loan. Defendant alleged by answer that the parties had mutually agreed to the termination of the written lease thus constituting a surrender thereof; that $1,850 of the sum allegedly loaned to defendant by the plaintiff was expended on plaintiff's farm, known as the Iverson place which was worked by defendant under an oral lease agreement until he was evicted by the plaintiff. By way of counterclaim defendant alleged that prior to his eviction, he performed services on the Iverson place worth $3,350 for which he was not reimbursed; that after the eviction plaintiff harvested the crops and received $8,000 therefrom, and that after crediting the sum of $1,850 advanced by plaintiff, there is a balance of $1,600 owing to the defendant as his share of producing said crops on the Iverson place. The written lease on the Penrose place was executed September 18, 1948. The term of the lease was three years. The trial court found that the parties mutually agreed to the surrender of the lease on November 5, 1949, subject to the condition that there be division of the proceeds of the crops as the same were harvested. The plaintiff's share was found to amount to $458.90. No appeal is taken from this determination.

With respect to the second cause of action for money allegedly advanced to defendant, the court found that $1,690 of funds were expended by defendant toward the care and production of crops on the Iverson place; and that an additional sum of $400 was advanced for purposes other than in connection with said property of plaintiff. The court further found that in consequence of a dispute between the parties in August 1949, the oral lease was rescinded and plaintiff took over the crops, harvested the

same and obtained all of the benefits therefrom. The court found that at the time of the mutual rescission of the oral lease defendant had performed services on the Iverson place and that the parties did not contemplate that defendant should still owe the sum of $400, but that there was a mutual cancellation of obligations. The court ruled that plaintiff was not entitled to recover anything on his second cause of action; and also that defendant was not entitled to recover on his counterclaim, in view of rescission of the oral lease.

Plaintiff contends that he is entitled to recover attorney's fees in accordance with the covenant contained in the written lease, notwithstanding said lease was surrendered at his request nearly two years before it would otherwise have expired, and also prior to the date of filing this suit. In an action to recover rent, attorney's fees can only be awarded if there is an agreement to that effect.

In this case it is contended on the part of plaintiff that there was no intention to abrogate the obligations of the written instrument unperformed at the time of surrender of the lease and that it was agreed that the defendant would account for the balance of the crops produced that year. Both parties concede that the surrender of a lease by a lessee and acceptance of such surrender by the lessor extinguishes any liability for rent accruing on a date subsequent to the acceptance of such surrender of the unexpired term, since acceptance of such surrender of the unexpired term prior to accural of rent operates to discharge the lessee from future obligations to pay rent. *Willis* v. *Kronendonk*, 58 Utah 592, 200 P. 1025, 18 A. L. R. 947; *Tracy* v. *Thun*, 125 Or. 323, 267 P. 398, and note in 18 A. L. R. 957. It is not disputed that the parties came to an understanding that regardless of the surrender of the balance of the term and acceptance of such surrender by return of the lease itself to plaintiff, defendant would pay the rentals which had accrued for the current year

under the lease. Therefore, the obligation to pay rent, i. e. to account for the proceeds of the crops, must be treated as an accrued obligation at the time the lease was surrendered. Otherwise, the plaintiff would not be entitled to any rent whatsoever under the rule of *Willis* v. *Kronendonk*, supra.

The surrender of the lease does not operate to extinguish rights and obligations which have accrued prior thereto. If it is necessary to bring suit to enforce the obligations, which are treated by the parties as having accrued, then attorney's fees should be awarded as a necessary incident, being part of the agreement which is still in force. An agreement written into the lease providing for attorney's fees is intended to operate in case the lessee breaks off relations with the lessor and it becomes necessary to bring an action in the courts to enforce the provisions of the lease. If there are obligations which have already accrued and are due and owing to the lessor, and he is compelled to sue in order to recover such sums, then the clause providing for attorney's fees should be construed as a contractual right to collect such fees as damages arising at the same time as the obligation which is sued upon, i. e. prior to surrender. The surrender does not operate to cut off this right, when the lessor subsequently is unable to collect his share of the crop money under the provisions of the lease.

However plaintiff is not entitled to attorney's fees in this case because prior to the commencement of this action, the plaintiff went to the home of the defendant, and at that time there was no difference between the parties concerning the property which had been held under the written lease. The defendant refused to settle accounts until there was a settlement concerning the Iverson place which he farmed under the oral agreement. The plaintiff contended that the $2,090 advanced by him was a loan to the defendant. The defendant was willing to pay $458 or one-third of the sugar beet crop on the Penrose farm

but contended that the alleged loan was used by him to farm the Iverson place and that he therefore was not obligated to repay this sum to the plaintiff. Therefore, it was not necessary for the plaintiff to bring suit to enforce the terms of the written lease and no attorney's fees should be allowed. The dispute over the oral lease agreement was the real contested matter and no attorney's fees can be awarded because of the fact that suit was brought joining the two separate causes of action.

Plantiff contends that the trial court erred in denying him relief on his second cause of action, inasmuch as it is undisputed that the total sum of $2,090 was advanced to defendant. Plaintiff argues that a duty was imposed on defendant to repay those sums. However, the trial court found that except for $400, the moneys were advanced to cover costs and expenses of cultivation of crops on the Iverson place owned by plaintiff, which defendant operated under oral lease until about August 15, 1949. At the conclusion of the trial the court ruled from the bench that the oral lease had been rescinded by mutual agreement of the parties and as evidenced by their conduct, and that it would be inequitable to permit plaintiff to retain all the proceeds from the sale of the crops and also recover from defendant the sums advanced to defendant to help mature those crops. The court also ruled in substance that during the period of about 10 weeks when defendant was operating under the oral lease, he cultivated, weeded and watered the crop, and that the parties did not contemplate that defendant would still owe plaintiff $400 and deprive defendant of his services; and that the parties mutually canceled all obligations.

The findings recite that with respect to the oral lease a dispute arose between the parties about the middle of August, 1949, ofer the "scalding" of a portion of the sugar beet crop from excessive watering; that the parties resorted to "violent and forceful" language; that it was agreed that defendant should surrender his oral lease and that plaintiff

would receive the crops; that plaintiff would make no claim on defendant for the $1,690 actually advanced by plaintiff to defendant and expended on the Iverson place; and also that

"defendant was to be credited with the $400 theretofore advanced to him personally by the plaintiff in full satisfaction for all personal services rendered"

by him on the Iverson place. The court found there was an accord and satisfaction.

It is urged by plaintiff that there is no evidence whatsoever in the record to support the above-quoted portion of the findings which recites that defendant was to be credited with the $400 in satisfaction of his services on the Iverson place; and plaintiff further contends that the evidence does not support a finding of mutual rescission of the oral lease, but shows a voluntary abandonment of the leasehold by defendant.

It is conceded that there was an argument over the manner in which defendant had irrigated the sugar beet crop. Plaintiff became angry and he insisted that defendant must remain on the place at all times while irrigating the beets. Defendant stated that he could not spend all of his time there. The record shows that at the time plaintiff induced defendant to take over the property under oral lease, plaintiff was fully aware of the fact that defendant had other interests which required attention, including a farm of his own and also a written lease on other property owned by plaintiff. According to the testimony of defendant and of his witnesses, he told plaintiff he could not remain on the Iverson place all the time the beets were being irrigated; and that plaintiff then said in substance that he could not allow defendant to stay on the Iverson place. Thereupon defendant said,

"You will have to pay me for what time I put in here on the beets and take over yourself,"

to which plaintiff respondent,

"All right, I will; I'll do that. I'll pay you well for what you've done here."

Plaintiff also said to defendant's wife when she said her husband was running the farm all right,

"No, he isn't farming it all right. I'll run those beets if he can't stay there all the time."

He also declared that he had dozens of men to put on that place. Within a few days defendant left and the plaintiff took over cultivation of the crop which defendant had theretofore handled under his oral lease with plaintiff.

The theory of plaintiff was that defendant abandoned the oral lease, surrendered the crop to plaintiff and relinquished all interest in it to plaintiff, all of the sums theretofore advanced to defendant in the cultivation of the crop as well as the additional sum of $400. This is asserted although defendant had handled the crop for 10 weeks, during which time he weeded, watered and cultivated about 33 acres of sugar beets. The trial court rejected the contentions of plaintiff, deeming it unreasonable that defendant would willingly give up the oral lease, allow plaintiff to have all the proceeds from the crop and still owe plaintiff for the sums advanced for its cultivation. Plaintiff's theory involved a forfeiture of all rights of defendant. There was no written lease, and consequently no forfeiture provision. Forfeitures are not favored. Even contracts which expressly provide for a forfeiture will not be extended beyond the strict and literal meaning of the language used. 12 Am. Jur., Contracts, § 436, p. 1016. See also 32 Am. Jur., Landlord and Tenants, §§ 847-848, pp. 720-21. Plaintiff had no right of forfeiture, and his declared intention to take over the crop if defendant did not comply with his demands amounted to an offer to rescind the lease. Defendant's evidence is to the effect that

he told plaintiff that plaintiff would have to pay him for his work, and that plaintiff said he would pay him well.

The evidence amply supports the finding of the trial court that there was a rescission of the oral lease. Even if plaintiff had not agreed to indemnify defendant for his work, his offer to rescind which was acted upon by defendant implied an intention to discharge his duty to restore defendant to status quo. The conduct of plaintiff in taking all of the benefits in the form of proceeds from the crop, imposed on him the duty to indemnify defendant for his investment prudently made in the crop up to that time, both as to money and labor. As to the duty of the party receiving the benefits to restore the other party to status quo, see 12 Am. Jur., Contracts, § 451, p. 1031.

Since it is not disputed that all except $400 of the money advanced to defendant was prudently spent on cultivation of the beet crop, with respect to those sums plaintiff could not require repayment since he retained the benefits. As to the $400 not devoted to cultivation of the crop, it is impossible to tell from the record whether that amount equaled the reasonable value of the services of defendant during the period of about 10 weeks when he weeded, watered and cultivated the crop. Neither party presented any evidence to show whether those services of defendant were worth more or whether they were reasonably worth less than $400 in view of the character of the work performed. If the trial court based its finding on any statement of the parties or their counsel, such statement nowhere appears in the record.

On his cross-appeal defendant contends that he should have been awarded damages on his counterclaim for constructive eviction. It was within the power of defendant at tenant to reject the demands of plaintiff as landlord. Plaintiff did not oust defendant from possession, and the evidence does not warrant any finding

of constructive eviction. See 32 Am. Jur., Landlord and Tenant, § 246, pp. 231-232. The court properly found that by both language and conduct of the parties, there was a rescission of the oral lease, and that the statements made by plaintiff and defendant together with their conduct subsequent thereto were inconsistent with continuation of the oral lease. The holding of the court in *Boyd* v. *Gore*, 143 Wis. 531, 128 N. W. 68, correctly characterizes the legal effect of the conduct of the parties as found by the trial court. The holding of the Wisconsin court is correctly reflected in the second syllabus:

"That a landlord of a farm objected to the tenant staying thereon because he had gone into debt, that the landlord told the tenant that he had better leave because he could not carry on the farm, that the tenant replied that it was all right and removed from the farm, and that the landlord accepted, and resumed the possession, did not show an eviction by the landlord, but only a voluntary surrender." See also 12 Am. Jur., Contracts, §§ 430-433, pp. 1010-1013.

For the reasons hereinabove expressed, the judgment is affirmed except with respect to the $400, and the cause is remanded to the district court with directions to determine the reasonable value of defendant's services in connection with the weeding, watering and cultivation of the beet crop during the period of approximately 10 weeks he operated under the oral lease. If the parties fail to agree on value, such value is to be determined from further evidence, and if the value found is a figure other than $400, the judgment shall be modified accordingly.

Each party shall pay his own costs on this appeal.

WOLFE, C. J., and WADE and CROCKETT, JJ., concur.

HENRIOD, J., not participating.