FRISCO JOES, INC., a Utah Corporation, et al., Plaintiffs and Appellants,

v.

Ellis Y. PEAY et al., Defendants and Respondents.

No. 14515.

Supreme Court of Utah.

Jan. 10, 1977.

5. Sec. 77-42-1, U.C.A.1953; *State v. Condit,* 101 Utah 558, 125 P.2d 801 (1942).

S. Rex Lewis, of Howard, Lewis & Petersen, Provo, for plaintiffs and appellants.

Boyd L. Park, Richard L. Maxfield, Cullen Y. Christensen, Provo, for defendants and respondents.

CROCKETT, Justice:

Plaintiffs Donald V. Tolman, his wife Joanna, and Frisco Joes, Inc., brought this action based upon the alleged forcible entry of their cafe by their landlord, defendant Ellis Peay. They combine with it an action against defendants Peay and Gordon Hall

and Kenneth Hostetter, who are the subsequent lessees of the defendant Peay, for conversion of the personal property. Defendant Peay counterclaimed for unpaid rent. From the trial court's dismissal of plaintiff's claims and his granting defendant Peay judgment for $1,250 for rent, plaintiffs appeal.

On December 18, 1974, plaintiffs Tolman purchased the restaurant known as Frisco Joes in Provo, which was in a building leased from the defendant Ellis Peay; and also purchased certain personal property and equipment therein which belonged to the previous operators. On January 2, 1975, the Tolmans entered into a new five-year lease with Mr. Peay. It called for $400 per month during the first year, and $450 per month thereafter. The rent was to be paid in advance on the first of each month, with the exception of the rent for the last month of the five year lease, which was to be paid by March 15, 1975. It also provided that any unpaid rent would be a lien against any of plaintiffs' personal property, which was not to be removed until all rent was paid.

Plaintiffs paid the rent for January, but failed to pay it for February and listed the business for sale on February 12, 1975. It continued to lose money and on March 2, 1975, the plaintiffs closed it down.

Three days later, on March 5, the plaintiffs informed defendant Peay that they had no money to pay rent. Arising out of this situation, plaintiffs Tolman agreed that defendant Peay should attempt to rent the cafe to someone else; and that within a few days, which would give them opportunity to remove their personal property, they would return the keys to him. But, the keys were not returned.

### The Claim of Forcible Entry

Mr. Peay's version of what occurred is that about a week later, on March 12, 1975, a neighbor businessman called and told him that the door to the restaurant was open and the place was unattended. He went there and saw that some of the personal property of the plaintiffs had been removed; and that inasmuch as the plaintiffs had not returned the keys as they had promised, in order to carry out the plan of attempting to re-lease the property, and to protect it, he had the locks changed on the doors. The plaintiffs learned that the locks had been changed, but did not make a request for a set of the new keys, nor for the rest of their personal property still located there.

By the end of March 1975, defendant Peay had found new lessees for the cafe, defendants Hall and Hostetter. They took possession on April 1, and proceeded to operate the business. It was then that the plaintiffs brought this action seeking damages for alleged forcible entry; and also for conversion of personal property. As to the first, they place reliance on our forcible entry or detainer statute, Section 78–36–1, U.C.A.1953, which provides that "every person is guilty of a forcible entry who:

"(2) After entering peaceably upon real property, turns out by force, threats or menacing conduct the party in actual possession."

█ We are in accord with the plaintiffs' contention that under that statute, where one party (plaintiffs) is in peaceable possession of real property, another (defendant) even though entitled to possession by contract or otherwise, is not only forbidden to use force, but he may not use stealth or deception or any other devious means of obtaining possession, and then by deception or force exclude the first from the premises, but must use the processes of law to obtain possession.[1]

█ The difficulty with the plaintiffs' argument is that they assume the facts according to their own version of what happened, rather than as found by the trial court, as they should; and as we are obliged to do on appeal.[2] A necessary predicate to their cause of action for forcible entry is that they were in actual and peaceable pos-

1. See *Peterson v. Platt,* 16 Utah 2d 330, 400 P.2d 507, and authorities therein cited.

2. See *Hardy v. Hendrickson,* 27 Utah 2d 251, 495 P.2d 28 (1972).

session of the property.[3] They could not be so if there had been abandonment or a surrender of the premises. Whether this had been accomplished was for the trial court to determine from the conduct and expressions of the parties with respect thereto.[4] In accordance with that prerogative, on the basis of the facts hereinabove recited that the plaintiffs had closed the cafe, had left it unattended, and had told the defendants that they could not pay the rent and advised him to attempt to find a new lessee, the trial court expressly found that the plaintiffs had surrendered the premises; and that they were not in peaceful possession thereof when defendant Peay resumed possession. Inasmuch as there is a reasonable basis in the evidence to support that determination, the trial court was justified in rejecting plaintiffs' contention that the evidence compelled a finding in their favor on the issue of forcible entry.

### Re: Conversion of Personalty

 In order to prevail on their cause of action for conversion of personal property left in the cafe, the plaintiffs were obliged to meet this basic requirement of conversion: That there be a wrongful exercise of control over personal property in violation of the rights of its owner.[5] Reverting to the terms of the lease as recited above, it will be recalled that any unpaid rent was covenanted to be a lien upon plaintiffs' personal property and that it would not be removed from the premises until the rent was paid. Since the plaintiffs were delinquent in the rent for February and March, 1975, they were not entitled to remove the property until that rent was paid. Hence, the trial court was justified in re-

fusing to find the defendants had committed a conversion of the property.[6]

### Counterclaim for Rent

Defendant Peay's counterclaim for rent is grounded on the facts as recited above. The court found that plaintiffs owed rent of $400 for February, $400 for March, 1975 and $450 for the last month of the five-year lease, and entered judgment accordingly. By way of cross-appeal plaintiffs attack that finding and judgment.

 As a general proposition, where a tenant offers to surrender a lease and the landlord agrees to accept the surrender, that extinguishes any liability for rent after such surrender. But, it does not extinguish rights which have accrued beforehand.[7] Since the lease required payment of the rent in advance on the first of each month and no surrender occurred until March 12, 1975, we see no impropriety in the awards of $400 for February and March, totalling $800. This is true because the March rent had become due on March 1st.[8]

However, in regard to the $450 awarded for the last months rent of the five-year term, the situation is different. That payment was not to become due until March 15, 1975. Inasmuch as there had been a surrender by the plaintiffs and an acceptance by the defendants on March 12, 1975, that payment never did become due. It is therefore necessary to reduce the judgment by that amount.

Affirmed, except that the judgment of $1,250 on the counterclaim is reduced to $800. The parties to bear their own costs.

HENRIOD, C. J., and ELLETT, MAUGHAN and WILKINS, JJ., concur.

**3.** U.C.A., 78–36–9 (1953); *Paxton v. Fisher,* 86 Utah 408, 45 P.2d 903 (1935); *King v. Firm,* 3 Utah 2d 419, 285 P.2d 1114 (1955); *Freeway Park Building, Inc. v. Western States Wh. Sup.,* 22 Utah 2d 266, 451 P.2d 778 (1969); *Wangsgard v. Fitzpatrick,* 542 P.2d 194 (1975).

**4.** *Cutler v. De Jay Stores,* 3 Utah 2d 107, 279 P.2d 700 (1955).

**5.** *Allred v. Hinckley,* 8 Utah 2d 73, 328 P.2d 726 (1958).

**6.** 18 Am.Jur.2d, Conversion Section 61; *Johnson v. Flowers,* 119 Utah 425, 228 P.2d 406 (1951).

**7.** *Petersen v. Hodges,* 121 Utah 72, 239 P.2d 180; 49 Am.Jur.2d, Landlord and Tenant Section 1112.

**8.** *Rockwell v. Eiler's Music House,* 67 Wash. 478, 122 P. 12; *Wells v. Blystad,* 91 Colo. 346, 14 P.2d 1078; 52 C.J.S. Landlord and Tenant Section 494.